

U S DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

OCT 16 2000

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **GABOR P. BAKO** | **CIVIL ACTION NO. 00-1780** |
| **VERSUS** | **JUDGE MELANCON** |
| **ARGONAUT GREAT CENTRAL INSURANCE COMPANY** | **MAGISTRATE JUDGE TYNES** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ARGONAUT GREAT CENTRAL INSURANCE COMPANY'S MEMORANDUM CONCERNING THE AMOUNT IN CONTROVERSY

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of Argonaut Great Central Insurance Company ("Argonaut"), the defendant in the captioned action, in response to the Court's request.

This action was initiated by the filing of a petition by the plaintiff, Gabor P. Bako, in the 15th Judicial District Court, Lafayette Parish, Louisiana. Because the parties are diverse and the defendant believes that the amount in controversy exceeds the jurisdictional minimum, Argonaut removed the action to this Court.

The Court found, however, that the jurisdictional threshold is not facially apparent from Bako's petition and that the facts set forth in Argonaut's removal notice did not adequately establish jurisdiction. Therefore, on September 19, 2000, the Court ordered Argonaut to submit a memorandum, with supporting documentation, reciting sufficient specific facts to establish jurisdiction. This memorandum is submitted in response to the Court's order.



## EXHIBITS

Attached as Exhibit A is the affidavit of Thomas R. Juneau, Sr., counsel for Argonaut in this matter, with the following supporting documentation attached:

- Exhibit 1 - report from Laborde Diagnostics, dated August 5, 1998;

- Exhibit 2 - Bako's federal income tax return for 1998;

- Exhibit 3 - Bako's federal income tax return for 1999;

- Exhibit 4 - medical expenses charged by Dr. Blanda;

- Exhibit 5 - medical expenses charged by Dr. Jindia;

- Exhibit 6 - expenses charged by Orthopedic & Sports Physical Therapy Clinic of Lafayette, Inc.;

- Exhibit 7 - records documenting treatment at Medical Center of Southwest Louisiana on June 27, 1998;

- Exhibit 8 - medical records documenting tests or treatment at Our Lady of Lourdes Medical Center on October 28, 1998 and on November 15, 1999; and

- Exhibit 9 - Bako's responses to interrogatories propounded by Argonaut.

These documents will be discussed in detail in this memorandum.

## LAW AND ARGUMENT

Louisiana Code of Civil Procedure Article 893 forbids a litigant filing suit in Louisiana state court from stating, in his petition, the amount of money damages sought to be recovered in the lawsuit. This creates a hurdle for a defendant who desires to remove a Louisiana state court action on the basis of diversity. Not only must the defendant prove that the parties are completely diverse, the defendant must also prove - before discovery has been conducted - that the amount in controversy exceeds the jurisdictional minimum of $75,000. When the amount in controversy is facially apparent

from the plaintiff's petition, the defendant's task is simplified. In a case like this one, however, in which the petition describes the plaintiff's injuries in broad, non-specific terms, the burden upon the defendant is quite onerous. In this memorandum, Argonaut will explain why it believes the amount in controversy exceeds the jurisdictional threshold.

A. **The Standard for Determining the "Amount in Controversy"**

An action originally filed in state court can be removed to federal court if the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.[1] It is well-settled that the issue of subject matter jurisdiction, and the determination of the amount in controversy, must be based on a snapshot of the action, taken at the time of removal.[2] Subject matter jurisdiction cannot be defeated by post-removal events.[3] Therefore, a plaintiff cannot avoid federal jurisdiction by later stipulating to an amount of damages below the jurisdictional minimum if the allegations set forth in the complaint, when originally filed, would support the conclusion that the jurisdictional minimum was satisfied.

While no precise definition of the term of art "amount in controversy" has been crafted by the federal courts,[4] it is clear that the amount in controversy is measured by the amount claimed in

---

[1]    28 U.S.C.A. §1332.

[2]    *Chadwick v. Shell Oil Co.*, 828 F.Supp. 26, 27 (E.D. La. 1993); *Printworks, Inc. v. Dorn Co., Inc.*, 869 F. Supp. 436 (E.D. La. 1994).

[3]    *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

[4]    *Carnahan v. Southern Pacific R.R. Transp. Co.*, 914 F.Supp. 1430, fn. 4 (E.D. Tex. 1995).

good faith by the plaintiff rather than by the amount ultimately recovered by the plaintiff.[5] The amount in controversy is not what the defendant thinks the case is worth nor is it the amount that the plaintiff ultimately recovers in a particular case. It is, instead, the amount claimed in good faith by the plaintiff at the outset of the litigation.[6] Thus, the amount in controversy can be "determined by considering what would be a reasonably probable high-end award in cases similar to the one in question. In other words, amount in controversy is similar to the expression 'possible exposure' to liability."[7] It is also well-settled that the party invoking federal jurisdiction, the removing defendant Argonaut in this case, has the burden of demonstrating, by competent proof, that its jurisdictional allegations are valid.[8] The Fifth Circuit has enunciated a standard for determining whether a removing defendant has satisfied that burden of proof when the plaintiff has either plead a specific sum less than the jurisdictional limit or has, as in this case, not plead a specific amount at all. If it is "facially apparent" from the state court petition that the amount in controversy is likely to exceed the jurisdictional limit, the defendant successfully bears its burden by merely pointing that out to the court. If, on the other hand, the amount in controversy is not "facially apparent" from a review of the plaintiff's petition, then the defendant must prove, by a preponderance of the evidence,

---

[5]  *Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc.*, 417 F.2d 129, 131 (5th Cir. 1969).

[6]  *Johns-Manville*, cited supra, at 131.

[7]  *Carnahan*, cited supra, at fn. 5.

[8]  *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 563 (5th Cir. 1993) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253 (5th Cir. 1961); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981).

that the amount in controversy exceeds the jurisdictional minimum.[9] The type of evidence that might be used to prove the amount in controversy includes settlement demands, damage awards in similar cases, or common experience.[10] Affidavits by the litigants' counsel may constitute such evidence but they do not automatically establish the amount in controversy, especially if they fall short of stipulating that the claimant will not seek more than the jurisdictional amount or if they are used to alter the amount originally in controversy rather than to clarify it.[11]

Why, then, does Argonaut believe that the amount in controversy in this lawsuit exceeds $75,000?

**B.      The Amount in Controversy Exceeds the Jurisdictional Minimum**

Argonaut suggests that the amount in controversy in this case exceeds the jurisdictional minimum. Argonaut further suggests that this is evident both from the face of the plaintiff's petition and also from a review of pertinent facts, some of which lie beyond the four corners of the plaintiff's petition.

### 1. It is Facially Apparent that the Amount in Controversy Exceeds the Jurisdictional Threshold

Because of the nature of the injury allegedly suffered by the plaintiff in this case and the type of damages sought to be recovered, and despite the Court's finding to the contrary, Argonaut suggests that it is apparent from the face of the plaintiff's petition that the amount in controversy in this case exceeds the jurisdictional minimum.

---

[9]   *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993); *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995).

[10]  *Carnahan*, cited supra, at 1432.

[11]  *Printworks*, cited supra, at 439, 440.

This lawsuit is based on an automobile accident that occurred on June 23, 1998. According to his petition, Gabor P. Bako was traveling north on Johnston Street in Lafayette, Louisiana, when his vehicle was suddenly struck from the rear by another vehicle. Bako recovered the full policy limits from the tortfeasor's automobile insurer, $10,000. He asserts that this sum was inadequate to compensate him for his injuries and he now seeks to recover additional sums from Argonaut, his UM carrier.

Before filing a notice of removal, Argonaut reviewed Bako's petition and estimated the amount in controversy based on Bako's allegations concerning his injuries and the type of damages he was seeking to recover. Bako's petition clearly alleges that he suffered an injury to his lumbar spine in the automobile accident. Paragraph II reads as follows:

> Plaintiff, GABOR P. BAKO, has sustained injuries to his entire mind, body, bones, ligaments, muscles and brain, and all of the said injuries have been a source of physical pain and mental anguish and have resulted in residual dysfunction, limitation of motion and physical impairment of function, and will continue to do so for an indefinite time in the future. All of the foregoing and especially, though not exclusively, the injuries sustained by GABOR P. BAKO to **his lumbar spine** are the results of the sole . . . negligence of [the tortfeasor]. [Emphasis added.]

The petition indicates that, as a result of this spinal injury, Bako suffered general and special damages. In Paragraph VII of the petition, his damages are itemized as follows:

> [P]laintiff has suffered and/or will suffer general and/or special damages, including but not limited to, great inconvenience, frustration, humiliation, embarrassment, loss of enjoyment of life and society, loss of consortium, mental anguish and/or distress, past and future **medical expenses**, past and future physical and mental **pain and suffering**, past and future **loss of wages** and/or **impairment of earning capacity**, collision, loss of use, storage, towage, vehicle rental and/or **property damage**. [Emphasis added.]

Clearly, then, it is facially apparent from Bako's petition that he allegedly suffered a lumbar spine injury and seeks to recover general damages for his alleged pain and suffering, and special

- Page 6 -

damages in the form of reimbursement for past and future medical expenses, and, perhaps most importantly, a loss of both past and future earnings as well as a loss of future earning capacity. Damages awards in similar cases and common experience dictate that, even if all that was known was that the plaintiff had allegedly suffered a lumbar injury, the defendant's potential exposure (depending, of course, upon the actual, yet-to-be-proven nature and extent of the injury) exceeded the jurisdictional threshold. Bako's wage loss allegations, especially when combined with the other allegations concerning the nature of the alleged injury, and the other damages sought to be recovered (e.g., medical expenses, property damages) supports Argonaut's good faith conclusion that the amount in controversy satisfied the jurisdictional threshold. It is important to remember that this conclusion was reached at the time of removal - when Argonaut possessed not much more information than that contained in the petition.

The Fifth Circuit's recent decision in *Simon v. Wal-Mart Stores, Inc.*[12] was mentioned by the Court in its order. However, that case is easily distinguished from this one because the damages allegations contained in the two petitions are vastly different.

In *Simon*, the plaintiff's purse was snatched in a Wal-Mart parking lot. In her petition, Mrs. Simon described her damages as "bodily injuries and damages including but not limited to a severely injured shoulder, soft-tissue injuries throughout her body, bruises, abrasions and other injuries."[13] She sought to recover for medical expenses, but nothing more. As the court noted, the petition "did not allege any damages for loss of property, emergency transportation, hospital stays, specific types of medical treatment, emotional distress, functional impairments, or disability, which damages, if

---

[12]   193 F.3d 848 (5th Cir. 1999).

[13]   *Id.* at 850.

alleged, would have supported a substantially larger monetary basis for federal jurisdiction."[14] Based on the damages allegations contained in Mrs. Simon's petition, the court held that it was not facially apparent that the amount in controversy exceeded $75,000.

In reaching that conclusion, the court contrasted the damages claimed by Mrs. Simon with those claimed by the defendant in *Luckett v. Delta Airlines*,[15] another case to which the Court has expressly directed Argonaut's attention. There, the plaintiff "specifically alleged damages for property, travel expenses, an emergency ambulance trip, a six-day stay in the hospital, pain and suffering, humiliation, and temporary inability to do housework following her hospitalization."[16] In *Luckett*, the damages allegations supported a finding that it was facially apparent from the plaintiff's petition that the amount in controversy exceeded the statutory minimum.

The damages alleged in this case are not as specific as those claimed in *Luckett* but neither are they as vague as those set forth in *Simon*. However, two important factors place this case more in the realm of *Luckett* than in the realm of *Simon*: the allegation that Bako suffered a lumbar spine injury and the allegation that Bako seeks to recover both lost wages and also for a loss of earning capacity.

Bako's allegation that he suffered an injury to his lumbar spine in the subject accident is significant because such an injury can oftentimes be quite severe. Admittedly, such an injury can sometimes also be minor. But the amount in controversy is equivalent to a reasonably probable high-end award in similar cases. Such awards are potentially in the range of zero to $50,000 (and

---

[14]     *Id.* at 851.

[15]     Cited supra.

[16]     *Id.* at 850.

sometimes even more) when the plaintiff does not undergo surgery.[17] Such awards can potentially range upwards of $100,000 if surgery is required.[18] Therefore, even if nothing more was known about Bako's injury than the fact that he alleged to have injured his lumbar spine, the amount of a reasonable high-end general damages award for a lumbar spine injury would probably be enough to tip the scales past the jurisdictional threshold.

The second factor is equally important. Bako has alleged that he suffered a loss of past and future earnings and that his earning capacity has been impaired. If substantiated, these claims might exponentially escalate the amount of damages awarded. Therefore, the wage claims vastly increase Argonaut's potential exposure.

---

[17] In *Manning v. Dillard Dep't Stores, Inc.*, 98-1767 (La. App. 3rd Cir. 3/24/99), 736 So. 2d 268, rev'd on other grounds, 99-1179 (La. 12/10/99), 753 So. 2d 163, $20,000 in general damages was awarded when an MRI revealed an abnormal condition in the lumbar region. A lumbar herniation at the L3-4 level resulted from an automobile accident and general damages of $30,000 were awarded in *Ceasar v. Stiner*, 98-898 (La. App. 3rd Cir. 12/9/98), 729 So. 2d 611. A patient who needed a lumbar fusion but had not yet undergone the procedure was awarded general damages of $60,000 in *Burnaman v. Risk Management, Inc.*, 97-250 (La. App. 3rd Cir. 6/18/97), 698 So. 2d 17, writ denied 97-1832 (La. 10/31/97), 703 So. 2d 23. A moderate disc bulge at L4-5 resulted in $80,000 of general damages in *Smith v. Goetzman*, 97-0968 (La. App. 1st Cir. 9/25/98), 720 So. 2d 39.

[18] In *Dupre v. Exxon Pipeline Co.*, 638 So. 2d 1118 (La. App. 3rd Cir. 1994), writ denied 94-2200 (La. 11/18/94), 646 So. 2d 379, $100,000 was awarded in general damages in a case involving removal of a herniated disc at L4-5. A Louisiana state trooper was awarded $145,000 in general damages when he underwent lumbar fusion. *Jackson v. Frisard*, 96-0547 (La. App. 1st Cir. 12/20/06), 685 So. 2d 622, writ denied 97-0201 (La. 3/14/97), 689 So. 2d 1387, writ denied 97-0193 (La. 3/14/97), 689 So. 2d 1386. General damages of $150,000 were awarded when the plaintiff underwent microlumbar surgery at L5-S1 in *Nettles v. ENSCO Marine*, 980 F. Supp. 848 (E.D. La. 1997). In *Hoback v. Kmart Corp.*, 628 So. 2d 1258 (La. App. 3rd Cir. 1993), writ denied 94-0063 (La. 3/11/94), 634 So. 2d 397, $150,000 was awarded in general damages to a plaintiff who underwent lumbar discectomy. In *Caro v. Louisiana & Delta R.R., Inc.*, 94-0059 (La. App. 1st Cir. 11/10/94), 646 So. 2d 435, writ denied 94-3008 (La. 2/3/95), 649 So. 2d 408, and in *Maldonado v. Louisiana Superdome Com'n*, 95-2490 (La. App. 4th Cir. 1/22/97), 687 So. 2d 1087, writ denied 97-0469 (La. 4/18/97), 692 So. 2d 448, $175,000 in general damages were awarded.

The only conclusion to be drawn from these two important allegations, reviewed in a vacuum without benefit of discovery as is necessary for removal purposes, is that the amount in controversy exceeds the jurisdictional threshold. For that reason, Argonaut urges the Court to reconsider its finding and to conclude that it is facially apparent from the plaintiff's petition that the Court has jurisdiction over this case.

2. **A Preponderance of the Evidence Supports a Finding That the Amount in Controversy Exceeds the Jurisdictional Threshold**

Even if the Court does not conclude that it is facially apparent from the plaintiff's petition that the jurisdictional threshold has been exceeded in this case, Argonaut suggests that a finding in favor of federal court jurisdiction is fully warranted because a preponderance of the evidence supports of finding that the amount in controversy exceeds $75,000. In addition to the factors mentioned above - the alleged nature of the plaintiff's injury and the nature of his damages claims, several facts not reflected on the face of the plaintiff's petition support the conclusion that removal was proper.

While the severity of that injury was not fully explained in the petition, diagnostic studies indicate that Bako has a herniated disc at L3-4.[19] His counsel has reported that Bako is seriously considering undergoing a surgical procedure to correct that herniation.[20] Indeed, Bako underwent two previous lumbar surgeries at the L4-5 and L5-S1 levels several years ago.[21] Because spinal injuries run the gamut from minor to serious in nature and sometimes result in large general damages

---

[19] Exhibit A.

[20] Exhibit A.

[21] Exhibit A.

awards and because the petition did not reveal a great deal of information about Bako's particular injury, Argonaut estimated Bako's potential general damages in accordance with Louisiana jurisprudence under two possible scenarios - with and without surgery. Potential general damages for a lumbar-region injury that does not require surgery could be somewhere in a zero to $50,000 (or maybe even more) range.[22] Should surgery be required, the potential general damages could increase to the $100,000 to $150,000 range.[23] Thus, standing alone, the potential general damages award in this case might justify a finding that the amount in controversy exceeds $75,000.

However, potential general damages are not all that Argonaut considered in calculating the amount in controversy in this lawsuit. Argonaut also factored into its calculation an estimate of Bako's alleged past and future medical expenses, alleged past and future wage loss and loss of earning capacity, alleged damages relating to loss of use of his vehicle, and alleged property damage to his vehicle.

Bako is the general manager and minority owner of LaFonda Restaurant.[24] He has alleged both a loss of earnings and a loss of earnings capacity as a result of the accident. While he has not lost any time at work as a result of the accident to date,[25] that fact would certainly change if he undergoes back surgery. Should Bako undergo lumbar surgery and miss work as a result of the surgery, the potential exists for a decrease in Bako's earnings at least during his convalescence.

---

[22] See the cases cited in Footnote 17.

[23] See the cases cited in Footnote 18.

[24] Exhibit A.

[25] Exhibit A.

Additionally, Bako is apparently scheduled to become the majority owner of LaFonda Restaurant.[26] It is not known at this time whether Bako's alleged injury, the anticipated surgery, or his recovery from the injury and/or the surgery will impact his acquisition of a majority interest in the restaurant. If so, then additional elements of earnings loss could potentially be included in Bako's wage claim.

Bako's W2 earnings for 1998 (the year in which the accident occurred) were $86,862.[27] His tax return for 1999 reveals earnings that were approximately $15,000 less.[28] It is unknown at this stage of the litigation if the decrease in earnings was a direct result of the accident or whether the alleged injury - even if surgically corrected - will cause a decrease in Bako's earnings during 2000 and subsequent years. Similarly, it is unknown if continued conservative treatment of the alleged injury - without surgery - would result in a consistent failure of Bako to earn at his pre-accident rate.

Regardless of those variable factors that might impact the ultimate calculation of damages in this case, Bako has asserted a wage claim and has produced documents indicating that his wages decreased after the accident. That must be taken seriously and factored into the jurisdictional equation. At a minimum, there potentially is a $15,000 wage loss to be added in and the potential exists for that $15,000 to be multiplied by the years remaining in Bako's work life. He was 51 years old at the time of the accident, resulting in a potential wage claim of $15,000 to $210,000. Because a wage claim has been asserted, the amount in controversy rapidly escalated.

---

[26]   Exhibit A.

[27]   Exhibit A.

[28]   Exhibit A.

To date, Bako has produced only incomplete medical expense records. However, he has documented $5,605 in medical expenses. This does not include hospital charges for his initial emergency room visit at Medical Center of the Southwest or the hospital charges incurred when he received pain-relief injections at Our Lady of Lourdes Medical Center.[29] Should he undergo surgery for the herniated disc, an additional $30,000 to $40,000 in medical bills would also be incurred.[30] Thus, Bako's alleged medical expenses add a significant sum to the total amount in controversy.

Bako has now indicated that he is not asserting a property damage claim in this lawsuit,[31] despite the claim clearly enunciated in his petition. At the time that this action was removed, however, his property damage claim was viable and played a part in the calculation of the amount in controversy. It is not clear if Bako has also waived the claims mentioned in his petition concerning the loss of use of his vehicle following the accident and his claims for reimbursement of towing and rental car expenses. At least a nominal amount - perhaps in the $1,000 to $2,000 range - must be added to the calculation in connection with those alleged expenses.

In summary, then, when Argonaut's counsel received a copy of the petition Bako filed in state court, and learned that Bako claimed to have suffered a lumbar spine injury that resulted in claims including but not limited to a loss of earnings claim and a loss of earning capacity claim, he formulated the good faith belief that the total amount of damages claimed by the plaintiff exceeds the jurisdictional threshold of $75,000, exclusive of interest and costs. The undersigned's estimate

---

[29] Exhibit A.

[30] See, e.g., *Bradford v. Winn Dixie of Louisiana, Inc.*, 94-0667 (La. App. 4th Cir. 12/28/94), 648 So. 2d 464.

[31] Exhibit A.

of the amount in controversy was derived by totaling reasonable general damages (based on with surgery and without surgery scenarios), medical expenses (again contemplating with surgery and without surgery scenarios), lost wages, lost earning capacity, property damage, and vehicle loss of use expenses. The validity of the conclusion that the sum of these estimated figures was greater than $75,000 was confirmed through discovery responses and additional information obtained from the plaintiff's counsel, as explained above. A preponderance of the evidence mandates the conclusion that the amount in controversy in this lawsuit exceeds $75,000.

## CONCLUSION

Because the amount in controversy in this lawsuit exceeds $75,000 and because the parties are diverse in citizenship, this Court has jurisdiction over this action.

<div style="margin-left:3em">
THE JUNEAU FIRM<br>
(A PROFESSIONAL LAW CORPORATION)

BY: _____<br>
THOMAS R. JUNEAU, SR., Bar No. 23153<br>
The Harding Center<br>
1018 Harding Street, Suite 202<br>
Post Office Drawer 51268<br>
Lafayette, LA 70505-1268<br>
Telephone No. (337) 269-0052<br>
COUNSEL FOR ARGONAUT GREAT CENTRAL<br>
INSURANCE COMPANY
</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this day been mailed to the following by depositing same in the United States Mail, postage prepaid and properly addressed as follows:

GABOR P. BAKO
through his attorney of record
Robert A. Mahtook, Jr.
Mahtook Law Firm
600 Jefferson Street, Suite 1000
Lafayette, LA 70502

Lafayette, Louisiana, this 12 day of October, 2000.

THOMAS R. JUNEAU, SR.

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

## NOTICE OF DOCUMENTATION NOT FILED IN RECORD

CASE# 6:00CV1780

GABOR P. BAKO

   VS.

ARGONAUT GREAT CENTRAL INSURANCE COMPANY

ATTACHMENTS TO:

   DOCUMENT#:   10

   DESCRIPTION:  Memorandum Concerning the Amount in Controversy

   FILED BY:      Defendant

   FILE DATE:     October 16, 2000

HAVE BEEN PLACED IN AN ACCORDIAN FOLDER

                                     S. McInnis

                                       DEPUTY CLERK

# THE JUNEAU FIRM

A PROFESSIONAL LAW CORPORATION

PATRICK A. JUNEAU
MICHAEL J. JUNEAU
BARRY L. DOMINGUE
THOMAS R. JUNEAU, SR. †
SUE NATIONS
JOHN RANDALL WHALEY
KAREN BORDELON LEVY

† Also Licensed in Texas and Washington

THE HARDING CENTER
1018 HARDING STREET • SUITE 202
LAFAYETTE, LOUISIANA 70503

www.juneaulaw.com

MAILING ADDRESS:
P.O. DRAWER 51268
LAFAYETTE, LA 70505-1268

TELEPHONE (337) 269-0052
FACSIMILE (337) 269-0061

Writer's E-Mail Address:
trj@juneaulaw.com

RECEIVED OCT 16 2000 ROBERT H. SHEMWELL, CLERK WESTERN DISTRICT OF LOUISIANA SHREVEPORT, LOUISIANA

October 12, 2000

Honorable Robert H. Shemwell
Clerk-United States District Court
Western District of Louisiana/L-O Div.
1167 U. S. Courthouse
300 Fannin Street
Shreveport, Louisiana 71101

    Re:    Gabor P. Bako
    Vs.    Argonaut Great Central Insurance Company, et al
    No.    6:00CV1780
            Judge Melancon; Magistrate Judge Tynes
            Our File No. 2900-06

Dear Mr. Shemwell:

    Enclosed herewith please find the original and one copy of Argonaut Great Central Insurance Company's Memorandum Concerning the Amount in Controversy for filing on behalf of Argonaut Great Central Insurance Company. Please file the original within the record and forward a conformed copy to the undersigned.

    By copy of this letter, same has been forwarded to Judge Tucker L. Melancon, Magistrate Judge Pamela A. Tynes, and all counsel of record.

    With kindest personal regards, I remain

                              Yours very truly,

                              THOMAS R. JUNEAU, SR.

TRJ/jbd
Enclosures
cc:    Judge Tucker L. Melancon
        Magistrate Judge Pamela A. Tynes
        Mr. Robert A. Mahtook, Jr.